■ In the Matter of ANGELIQUE L., an Infant. SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TRACY L., Appellant. (Proceeding No. 1.) In the Matter of KILE L., an Infant. SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TRACY L., Appellant. (Proceeding No. 2.) [840 NYS2d 811]—

In two related child protective proceedings pursuant to Family Court Act article 10, the mother appeals from an order of fact finding and disposition of the Family Court, Suffolk County (Sweeney, J.), entered November 2, 2005, which, after fact-finding and dispositional hearings, found that she had neglected the subject children and, upon her consent, directed that the children remain in the care and custody of the Suffolk County Department of Social Services for a period of one year.

Ordered that the appeal from so much of the order of fact finding and disposition as directed that the children remain in the custody of the Suffolk County Department of Social Services for a period of one year is dismissed, without costs or disbursements; and it is further,

Ordered that the order of fact finding and disposition is affirmed insofar as reviewed, without costs or disbursements.

On June 1, 2005, the petitioner, Suffolk County Department of Social Services (hereinafter DSS), commenced the instant proceedings by filing two petitions pursuant to Family Court Act § 1022 for the emergency removal of the children, Angelique L., born October 3, 1996, and Kile L., born November 5, 1997, from the custody of their mother, Tracy L. An emergency removal hearing was held that day, where a DSS caseworker, Nicole Manger, testified that she made a surprise visit to the home of the mother and August B., the mother's live-in companion, on May 31, 2005, as the children had recently been returned to the mother's custody from foster care. Upon arrival, the caseworker found the mother and Angelique crying and was told by the mother that the companion had hit the mother while Kile was present. Angelique was in her room, crying "hysterically," and the case worker found Kile in another room. Kile told her that the companion had hit his mother and that if he did so again, Kile would "beat him black and blue and kill him." Kile also expressed a desire to return to foster care. According to the caseworker, the mother did not wish to press charges against the companion because she considered the incident minor, and she did not want him to leave because she depended on him for financial support. The caseworker called the police and had the companion removed from the home. At the conclusion of the hearing, the Family Court issued an order dated June 1, 2005, temporarily removing the children from the mother's custody and placing them with DSS.

Subsequently, a neglect petition was filed against the mother, alleging that she failed to protect the children from physical, mental, and emotional harm resulting from the incident on May 31, 2005, and from "frequent" incidents of domestic violence. Following a fact-finding hearing on the petition against the mother, the Family Court issued an order entered October 21, 2005, finding that the mother had neglected the children based on her failure to protect them from the effects of the domestic violence inflicted upon her by the companion. On November 2, 2005, an order of fact finding and disposition was entered, inter alia, directing the children's continued placement with DSS for a period of one year upon the mother's consent. The mother appeals, and we affirm insofar as reviewed.

Preliminarily, the mother's contentions relating to an order dated June 1, 2005, directing the children's temporary removal pursuant to Family Court Act § 1022, are not reviewable, as that order was superseded by the order of fact finding and dis-

position entered November 2, 2005 (*see Matter of John S.,* 26 AD3d 870 [2006]; *Matter of Joyce SS.,* 245 AD2d 962 [1997]).

The appeal from so much of the order of fact finding and disposition entered November 2, 2005, as directed that the subject children remain in DSS's care and custody for a period of one year must be dismissed as that portion of the order was entered on the mother's consent. No appeal lies from an order entered on the consent of the appealing party (*see Matter of Jerome Marcel T.,* 28 AD3d 780, 781 [2006]; *Matter of Kristina R.,* 21 AD3d 560, 562 [2005]). Moreover, that portion of the order of fact finding and disposition has been rendered academic, as it has expired by its own terms (*see Matter of Desiree C.,* 7 AD3d 522, 523 [2004]; *Matter of Salvatore C.,* 6 AD3d 431, 432 [2004]).

However, since the prior adjudication of neglect "constitutes a permanent and significant stigma which might indirectly affect the [mother's] status in future proceedings" (*Matter of Daqwuan G.,* 29 AD3d 694, 695 [2006]; *see Matter of My'Kia A.,* 8 AD3d 481, 482 [2004]), the mother's appeal from that portion of the order of fact finding and disposition which found that she had neglected her children is not academic (*id.; Matter of Department of Social Servs. v Juana M.,* 232 AD2d 487 [1996]).

With respect to the merits, the Family Court properly found that DSS sufficiently established, by a preponderance of the evidence (*see* Family Ct Act § 1046 [b]), that the mother neglected the subject children. Where a neglect petition is predicated on a child's exposure to domestic violence, the sole allegation that a parent has been the victim of abuse and that the child witnessed the abuse is insufficient to support a finding of neglect (*see Nicholson v Scoppetta,* 3 NY3d 357, 371 [2004]; *Matter of Ravern H.,* 15 AD3d 991, 992 [2005]). There must also be a showing that "the children were actually or imminently harmed by reason of [the parent's] failure to exercise even minimal care in providing them with proper oversight" (*Nicholson v Scoppetta, supra* at 372; *see Matter of Christopher B.,* 26 AD3d 431, 432 [2006]). In evaluating whether a parent exercised minimal care in this context, a court must determine whether "a reasonable and prudent parent [has] so acted, or failed to act, under the circumstances then and there existing" (*Nicholson v Scoppetta, supra* at 370; *see Matter of Paul U.,* 12 AD3d 969, 971 [2004]), taking into account the "special vulnerabilities" of the child (*Nicholson v Scoppetta, supra* at 370). Moreover, the evidence of impairment or risk of imminent impairment must be "clearly attributable to the unwillingness or inability of the [parent] to exercise a minimum degree of care toward the child" (Family Ct Act § 1012 [h]; *see Nicholson v Scoppetta, supra* at 370).

The evidence adduced at the fact-finding hearing established that the children, who had previously been removed from the mother's custody on two separate occasions as a result of neglect petitions against the mother, had reported to the caseworker that there had been domestic incidents between the mother and companion preceding the incident on May 31, 2005, and that the companion had hit them in the past. In fact, the children had only been returned to the mother for approximately three weeks before this domestic violence incident and were extremely vulnerable, the child Angelique having just been released from a psychiatric facility and the child Kile having been the subject of sexual abuse by the mother's former boyfriend. The Family Court found "that the child Kile actually asked to be placed back into foster care and threatened to kill the [companion] if he hit his mother again."

Under these circumstances, DSS established that the children were subject to actual or "imminent danger of injury or impairment" of their emotional and mental condition (*Matter of Rakim W.,* 17 AD3d 376, 377 [2005]; *see Matter of Todd D.,* 9 AD3d 462, 463 [2004]; *Matter of Jessica DiB.,* 6 AD3d 533, 534 [2004]), from exposure to the incidents of domestic violence in the mother's home. This impairment of the children's emotional health was clearly attributable to the mother's unwillingness or inability to exercise a minimum degree of care toward them to protect them from the harmful effects resulting from domestic violence (*see Nicholson v Scoppetta, supra* at 369), including the mother's effort to minimize the effects of the domestic violence incident, her total lack of awareness of the impact of the violence on the children, and her reluctance to have the companion leave the home (*see Matter of Michael WW.,* 20 AD3d 609, 611-612 [2005]; *Matter of Richard T.,* 12 AD3d 986, 987 [2004]). Rivera, J.P., Krausman, Skelos and Balkin, JJ., concur.